UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PAUL A. BERGERON,

        Plaintiff,                         Case No. 1:16-cv-460

v.                                           Honorable Gordon J. Quist

HEIDI WASHINGTON et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

### Factual Allegations

Plaintiff Paul A. Bergeron presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC), although some of the actions about which he complains occurred while he was housed at the Oaks Correctional Facility

(ECF). He sues MDOC Director Heidi Washington, MDOC Deputy Director Kenneth McKee, MDOC Office of Legal Affairs Manager Richard D. Russell, and the following ECF officials: Warden Thomas Mackie; Deputy Wardens T. Ball and (unknown) Sharp; Inspectors (unknown) Spencley, (unknown) Riggs, and (unknown) Scheibner; Resident Unit Manager (RUM) M. Surbrook; former RUM G. Miniard; Grievance Coordinator T. Bassett; Lieutenant (unknown) Bromley; Sergeant (unknown) Youndt; Correctional Officers (unknown) McColl, C. Guzikowski; D. Black, (unknown) Homrich; Nurses (unknown) Briskie, (unknown) Swickley, P. Lamb, and (unknown) Billinger; Unknown Multiple Correctional Officers (Unknown Part(y)(ies)). He also sues the following IBC officials: Warden Tony Trierweiler; Deputy Wardens (unknown) Davids and Matt McCauley; Inspectors (unknown) Wakefield and (unknown) Clouse; RUMs (unknown) Mote, (unknown) Vroman and (unknown) Thomas; Assistant Resident Unit Supervisors (ARUSs) Gretchen Walters, (unknown) Normington, and B. Young; Grievance Coordinator M. Robinson; A/CPC Manager[1] William Morrow; Facility Manager Arlene Edwards; Nurses Meredith J. Hammond, Sherri Gregurek, Karen Rosa, and Kevin D. Corning; Assistant Health Unit Manager (HUM) S. Buskirk; Doctor (unknown) Burke; Nurse Practitioner (unknown) Lindhout; mailroom officers B. Simpson and C. Brown; Sergeants (unknown) Goodymoot; (unknown) Perez; (unknown) Bennickson, (unknown) Roland, (unknown) Meijers; P/C (Prisoner Counselor) J. Erway; and Correctional Officers (unknown) Schafer, (unknown) Platte, (unknown) Neimic, (unknown) Garza-Martin, (unknown) Kowatch, (unknown) Coburn, (unknown) Bozo or Bozzo, (unknown) Conklin, (unknown) Ferris, (unknown) Partian or Partain, (unknown) Jackson, (unknown) Lemke, (unknown) Thompson, (unknown) Milanowski, (unknown) Johnson, (unknown male) Rose, (unknown female) Rose, (unknown) Issacs, (unknown) Brown, (unknown) Smith, (unknown) Fox-Jones, (unknown)

---

[1] Plaintiff does not define "A/CPC Manager."

Rienella, (unknown) Ellsworth, (unknown) Schwartz, (unknown) Mendez, (unknown) Miller, (unknown) Scott, (unknown) Cooper, and (unknown) Zander.  In all, Plaintiff names 81 Defendants, who appear to include virtually every MDOC employee with whom he has had interaction at two prison facilities, as well as their highest-level supervising officials.

Plaintiff's allegations are largely conclusory.  He complains that he has been harassed as a sex offender by staff and prisoners over a period of 21 months at ECF and IBC, with the majority of the abuse occurring at ECF.  Plaintiff alleges that he filed a grievance against an unknown individual, after which he alleges he received a misconduct ticket.  He attempted to file a grievance with the Internal Affairs Department in Lansing.  In that grievance, he allegedly named a number of unidentified ECF personnel as perpetrators of "discrimination, intimidation, retaliation and cruel and unusual punishment." (ECF No. 1, PageID.12.)  Thereafter, he was subjected to additional unspecified retaliation, "even from the grievance coordinator, RUM, prisoner counsel[o]r, as well as both deputy wardens." (*Id.*)  He allegedly attempted to gain assistance from the warden and the inspector, but his request "fell on deaf ears as it had done when warden - Thomas Mackie was assistant deputy warden at Chippewa (UFR) Facility in 2012." (*Id.*)  According to Plaintiff, the grievance coordinator, inspector and deputy wardens "fabricated" responses to his grievances, indicating that he had refused hearings and denying his grievances. (*Id.*)

At some point, Plaintiff decided to cover his window with his mattress, in an attempt to get attention.  His cell was then sprayed twice with chemical agent before the door was opened. Plaintiff alleges that he attempted to get down on the floor to be restrained by unspecified correctional officers, but he was lifted from the floor to his cement bunk.  Although he did not resist, Plaintiff was struck in the face and on the head, and his right hand was squeezed and twisted, until he felt the bones break.  After the incident, he was only allowed a 90-second shower to rinse off the

chemical agent. Plaintiff alleges that his wrist was fractured and his pinky finger was badly broken. He also contends that Defendant Homrich photographed Plaintiff's injuries on March 20, 2015, a few hours after the incident, and the photographs showed bruising on Plaintiff's body. Plaintiff's wrist was placed in an ace bandage for three days, but it was not x-rayed for two months. At that point, the x-ray technician noted, "old fracture/healed." (*Id.*, PageID.13.) Plaintiff alleges the grievance responders at all three levels of the grievance process lied, indicating that he had refused medical treatment, or otherwise found his grievances unsupported. Plaintiff also complains that he was never interviewed by internal affairs.

Plaintiff alleges that he continues to be abused and tortured at IBC, and he fears for his life. He complains that he has sent mail to the courts that had not been received. His grievances continue to be denied, "no matter how much evidence I provide." (*Id.*, PageID.14.) Plaintiff complains that all health care employees have failed to provide him necessary care, including his demand for blood tests after he suffered diarrhea and vomiting for an entire week. Plaintiff requests that counsel be appointed, "before they make me sicker as to where my death is caused . . . ." (*Id.*)

Plaintiff alleges that he has filed a separate complaint in the Eastern District of Michigan, in which he complains about the prison librarian and alleges other constitutional violations by many of the same Defendants at IBC.[2] He alleges that, because he has not yet received notice of service of that complaint, it must not have been sent to the court, demonstrating ongoing interference by prison officials with his rights. Plaintiff also states that he sent letters to a Sixth Circuit judge, the F.B.I., and Michigan Attorney General Bill Schuette, none of whom has responded

---

[2] Plaintiff filed an action in the Eastern District of Michigan, naming 63 Defendants, on April 14, 2016. *See Bergeron v. Washington et al.*, No.16-cv-11441 (E.D. Mich.), which was transferred to this Court by an order dated May 6, 2016. *See Bergeron v. Washington et al.*, No. 1:16-cv-476 (W.D. Mich. May 6, 2016) (ECF No. 4).

to his letters. From their failures to respond, Plaintiff concludes that the letters must not have been mailed, which he construes as evidence of pervasive corruption by the MDOC and its personnel.

Plaintiff contends that his allegations demonstrate that MDOC employees have retaliated against him, denied his grievances to cover-up violations of his civil rights, and violated multiple federal and state criminal laws. For relief, he seeks compensatory damages, together with injunctive relief in the form of punishment for the offenders, medical treatment by specialists for his hand and rotator-cuff injuries, removal to a federal prison facility, physical and mental examination by independent doctors, and polygraph examinations of all Defendants.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

With the exception of Defendants Washington, McKee, Russell, Mackie, and Homrich, Plaintiff fails even to mention any Defendant by name in the body of his complaint. He also references an unspecified grievance coordinator, RUM, prison counselor and two deputy wardens.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible

for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). His allegations against all Defendants other than Washington, McKee, Russell, Mackie and Homrich, as well as the unspecified grievance coordinator, RUM, prison counselor and two deputy wardens, therefore fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

To the extent that Plaintiff alleges that an unspecified grievance coordinator, RUM, prison counselor and two deputy wardens retaliated against him, his claim fails for multiple reasons. First, Plaintiff has named multiple Defendants with those titles, and he has wholly failed to identify which of those Defendants took any illegal action. He therefore has failed to give any named individual holding those positions adequate notice of his claim. *See Twombly*, 550 U.S. at 544.

Second, Plaintiff's only allegations against these loosely identified Defendants is that they engaged in "continued retaliation." Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must

establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not alleged the timing or nature of the protected conduct in issue, what adverse action was taken, or any fact linking the protected conduct to the adverse action. Accordingly, his speculative allegations fail on all three prongs of the requisite standard. *Thaddeus-X*, 175 F.3d at 394. For all these reasons, Plaintiff fails to state a claim against the unspecified grievance coordinator, RUM, prison counselor and two deputy wardens.

Plaintiff's sole allegation against Defendant Homrich is that Homrich took pictures of Plaintiff's injuries after the use of force that allegedly resulted in Plaintiff's broken wrist and finger. The taking of pictures of Plaintiff's injuries violates no constitutional right. Plaintiff does not allege that Homrich participated in the use of force or denied Plaintiff medical care. Plaintiff's allegations against Homrich therefore fall short of stating a plausible claim for relief. *Iqbal*, 556 U.S. at 679.

Finally, Plaintiff fails to make specific factual allegations against Defendants Washington, McKee, Russell, and Mackie, other than his express or implied claims that they failed to supervise their subordinates, failed to respond to his grievances, and/or failed to conduct an investigation into those grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Washington, McKee, Russell, and Mackie engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  May 31, 2016                               /s/ Gordon J. Quist
                                          GORDON J. QUIST
                                          UNITED STATES DISTRICT JUDGE